BESSIE FARNSWORTH, Appellant, v. HENRY UMLANDT,
Appellee.

**CONTRACTS:** Consideration—Sufficiency—Promise to Pay Debt of
1   **Another.** A promise to pay the debts of a corporation, in con-
sideration of a sale to promissor of all the assets of the corporation,
is supported by a sufficient consideration.

**APPEAL AND ERROR:** Review—Overruling Order for New Trial.
2   New trial should not be granted because the verdict is without
sufficient support in the evidence when manifestly the contrary
is true, and, in such case, the appellate court will not hesitate to
reverse the order for new trial.

*Appeal from Muscatine District Court.*—A. J. HOUSE, Judge.

THURSDAY, JUNE 29, 1916.

ACTION to recover from the purchaser of corporate prop-
erty the amount of a debt due from the corporation to the
plaintiff, based on the theory that the defendant, the pur-
chaser, agreed, as a part of the consideration of the sale to
him of the corporate property, to pay all the corporate debts.
Trial to a jury. Verdict for the plaintiff, which, on the
motion of the defendant, was set aside on the ground that the

verdict was not supported by the evidence.   Plaintiff appeals.
—*Reversed* and *Remanded*.

*Wade, Dutcher & Davis* and *D. V. Jackson,* for appellant.

*E. M. Warner* and *John Devitt,* for appellee.

GAYNOR, J.—One branch of the controversy involved in
this suit was before this court on appeal and was decided on
June 3, 1913, in favor of the plaintiff.   *See Farnsworth v.*
*Muscatine Produce & Pure Ice Co.,* 161 Iowa 170.   That was
an action brought by the plaintiff on the 20th day of January,
1911, against the Muscatine Produce & Pure Ice Company, a
corporation of which this defendant was president, to recover
an amount alleged to be due on account of fraud practiced
by the corporation in procuring from the plaintiff $1,000 in
exchange for stock in the corporation, which was alleged to
be worthless.   In that case, the court below dismissed plain-
tiff's petition.   On appeal, the case was reversed, and the
lower court directed to enter judgment for the plaintiff
against the corporation for the amount of her claim.   In that
case, she contended also that she was entitled to an equitable
lien upon the property of the debtor corporation for the
amount of her claim, it appearing that the property had been
transferred to a new corporation formed by the stockholders
of the old corporation, in which all the stockholders of the
old corporation became stockholders in the new corporation.
This court, upon that hearing, said:

"Plaintiff asks that her claim be established as a pre-
ferred claim, but we think, under the circumstances, we would
not be justified in going farther than to hold that the con-
tract of sale of the stock should be rescinded, and that judg-
ment be entered against the defendant, the old corporation,
for $1,000, with six per cent interest."

In a supplemental opinion filed on the 26th day of Sep-
tember, 1913, 177 Iowa 20, this court further said:

"Cause is remanded, with direction to the district court

to enter judgment against the defendant corporation for $1,000, with interest at six per cent from August 9, 1910, and for costs . . ., with leave . . . to amend and bring in new parties, that the court may hear all parties as to whether plaintiff is, or is not, entitled to a lien on the property described in the petition for the judgment herein directed to be entered.''

When the case reached the lower court again, judgment was entered, on January 5, 1914, against the defendant corporation, in favor of the plaintiff for the amount of her claim.  An amendment was filed in that case, October 30, 1913, making all parties interested, parties to the proceeding, and asking that she have an equitable lien established in her favor for the amount of her claim, against the property in the hands of the new corporation.  A substituted amendment to the petition was filed, February 23, 1914.  A hearing was had upon this supplemental petition, and decree entered in favor of defendant, dismissing plaintiff's petition in so far as she asked for a lien upon the property of the old corporation in the hands of the new.  From this, an appeal was taken to this court; and, on the 29th day of June, 1916, this court filed its opinion, reversing the lower court and ordering a decree in favor of the plaintiff, establishing an equitable lien on the property of the old corporation in the hands of the new corporation, for the full amount of her claim, for which judgment had been entered against the old corporation.

On the 30th day of October, 1913, on the same day on which plaintiff filed her amendment to her petition, hereinbefore referred to, she filed a petition in this cause, in which she asks personal judgment against the defendant, Henry Umlandt, for the amount of her claim so established against the old corporation.  In this petition, she alleges that she and her husband purchased stock in the Muscatine Produce & Pure Ice Company; that they were induced to do so by the fraudulent representations of the company; that the defendant herein was president of the company at the time; and she asks that

the sale be rescinded on account of the fraud, and that she have judgment against the defendant for the amount of her claim against the old company. She bases her claim to recover from this defendant on the ground that, after her claim had accrued, and she had commenced her action to recover from the corporation the amount of money paid for the stock so fraudulently sold to her, the Muscatine Produce & Pure Ice Company went into the hands of a receiver; that, on the 6th day of April, 1911, the receiver, under order of the court, sold all the assets of the corporation to this defendant, who then, and for nearly a year previous to that time, was president of the old corporation; that it was purchased by this defendant at a nominal consideration, the real consideration being an agreement on his part to pay all the debts of the old corporation. The next day after the sale, the receiver made a report of the sale, in which he recited that the property was sold to a number of persons who, heretofore, had been stockholders and directors of the corporation. These persons are sureties upon the notes of the corporation and upon its other debts in a considerable sum. These persons have arranged with the outstanding creditors of the concern, to the end and effect that the debts heretofore due by the Muscatine Produce & Pure Ice Company shall hereafter be the debts of the persons referred to, and the said corporation fully released from all liability therefor. Thereupon, the receiver was discharged.

In this case, it was not contended that the defendant, with the other stockholders, did not agree to pay the debts of the corporation. It affirmatively appears that he did, and that this was the consideration moving to the receiver for this property, and was so reported by the receiver. That this was one of the debts of the corporation at the time, cannot be seriously questioned. The contention of the defendant is that he did not agree to pay this particular debt; that he called on the receiver to make out a list of claims against the estate in his hands; that the receiver made out a list (which has not

been produced upon the trial), of all the debts owed to the corporation, and that plaintiff's claim was not upon the list; that he agreed to pay only such claims as the receiver listed.

It must be borne in mind that no notice was given to creditors of the appointment of this receiver, nor were they called upon to file a proof of their claims with the receiver. The sale was made without notice to creditors, and was made with the understanding that the purchasers at that sale should pay the debts of the corporation. The receiver had taken possession of all the assets of the concern. He held it in trust for the payment of the debts of the concern, including plaintiff's. Defendant knew of plaintiff's claim, although the receiver may not have had such knowledge. It does not appear that any claims were filed with the receiver by the holders of the claims. The receiver proceedings were disposed of in a summary way, with the consent and acquiescence of all the stockholders, including this defendant.

The only questions on the trial of this case were: (1) Was the plaintiff a creditor of the corporation at the time the receiver sold this property to the defendant? (2) Did the defendant, in consideration of the sale of the 1. CONTRACTS: consideration: property to him for the use and benefit of sufficiency: promise to pay the other stockholders, assume and agree to debt of another. pay this debt? If he did, the sale of the property to him was sufficient consideration therefor.

It has been affirmatively established that plaintiff was, at the time, a creditor of that corporation, and entitled to judgment against it for the amount of her claim. She has obtained judgment against it. She has established her claim. The only question, then, which can be mooted is: Did this defendant, in consideration of the sale of the corporate property to him, agree to pay this debt? We think the receiver would hardly have made his report, as he did, and procured an order of discharge, if he had not understood, at least, that all the debts of the corporation were to be paid by the purchaser of the corporate property. He so reported to the court, and, on this

report, he was discharged. We have not the slightest hesitancy in saying that the defendant had full knowledge of the report of this receiver, and of the action of the court. He now asks to be relieved of his obligation.

The defendant testifies, in answer to the following questions, as follows:

"Q. Mr. Umlandt, who bought the property at receiver's sale? A. Mr. Warner. Q. For whom? A. For myself. Q. You bought in at that sale all the property of every kind? A. Yes, sir. Q. The business and the personal property and the real property? A. Yes. Q. And subsequent to that time, there was another corporation organized, and the business has been run by that other corporation since? A. It was run as a partnership. Q. And then subsequently as a corporation? A. Yes, sir. Q. And when you arranged to buy in that property at receiver's sale, you also arranged to pay all the debts of the corporation? A. Yes, sir. Q. And all the debts were paid except this one, this particular claim of Mrs. Farnsworth's? A. We didn't owe that. Q. Everything else was paid? A. Yes, sir." On this point he further testified: "My understanding was that Mr. Hill, the receiver, at the time, got the bookkeeper to make up a schedule and which we looked over to see what it was, so we knew where the indebtedness of the company was. I don't know where the list is. Plaintiff's claim was not on the list. Q. Did you agree with Mr. Hill, the receiver, or anyone else, to pay the claim of Mrs. Farnsworth in consideration of the property to you? A. No, sir. Q. Now you may state what claims you were to pay in consideration of this property. A. The current obligations of the company and the indebtedness in the bank. There was a list in the hands of the receiver of the bills that the company owed, and notes in the bank. The property was finally deeded to me. There were others associated to form a company."

Clarence Opelt testified that he was employed by the receiver to make out a list or schedule of claims; that he

doesn't know where that list is now. It was used in settlement of the claims. It didn't contain plaintiff's claim. N. Hutchendorf testified that he was a stockholder. He was asked this question: "State what was said as to the claims that were to be paid, if anything, by Mr. Umlandt. A. All claims were to be paid that we owed. That is, what the company owed outside the claims, such as machinery claims, bank and all that." On cross-examination, he was asked:

"You said in your direct examination, in fixing up the balance to pay for this property, the Farnsworth claim was not mentioned at all? A. No, sir. Q. Mr. Umlandt was to pay whatever the company owed, and not anything the company did not owe, is that true? A. Yes, sir. Mr. Umlandt was to pay all the debts of the company."

He qualifies this, however, by saying that Mr. Umlandt agreed to pay the debts that appeared upon the schedule of property, prepared by the receiver. He was then asked this question:

"You did not hear any—can you name any particular claim that was talked about there at all? A. No, only the debts—what we owed."

He then, on re-direct examination, said that the debts referred to were those upon the schedule, and no others. On further cross-examination, he testified as follows:

"Q. Again I will ask you to tell a single word that was said by anyone there with reference to the debts that were going to be paid by the company. Tell us what was said. A. The debts were not discussed at all. We were going to pay the debts, that was all. Q. That was all? A. Yes, sir."

On further re-direct examination, his attention was again called to this schedule. He again asserted that, when he spoke of all the debts, he meant the debts on that schedule list, although he says no particular debts were discussed, and he re-asserts that Umlandt did not agree to pay any debts that were not on this schedule.

Dr. Klein, a stockholder, testified: "There were two

claims filed against the corporation. One of these claims was Mrs. Farnsworth's, and we had employed counsel to resist it." He was then asked what would happen if the court held against them on these cases. He answered, in substance, that they did not have a jackpot ready to meet it, but he said: "We knew we could meet all legitimate obligations. We were financially responsible." He was asked this question: "But in a general way, Mrs. Farnsworth's claim was talked over, to the effect that, if the court finally held for Mrs. Farnsworth, and that she had a just claim, it would be taken care of?" He says, "Our intention was to meet every obligation that we owed, but would not meet any obligation that we did not owe, or that we did not feel that we owed. We knew, at the time, that Mrs. Farnsworth's suit was pending, and that she was seeking to establish a lien against the property."

Other witnesses testified to this list, and to defendant's agreement to pay what was on the list, and that this list did not include plaintiff's claim. Dr. Beveridge called; testified that he was a stockholder in the Muscatine Produce & Pure Ice Company, and was present at meetings of the stockholders about the time of the sale made by the receiver. He had a schedule or list of the liabilities of the company. The purchasers agreed to pay only the listed debts. He was asked this question:

"And in making your preparations to get the property, to go ahead with the company, you did discuss the question that all the debts of the corporation should be paid, in a general way, before you got any schedule at all, didn't you? A. Yes, sir. Q. Then afterwards, the receiver brought in a schedule, didn't he? A. Yes, sir. There was nothing said in any conversation about where Mrs. Farnsworth would get her money if the court held it was a just debt. We knew she had a claim and was pressing it. There was no arrangement made about paying any perfectly legitimate claim that might have been overlooked in making this schedule, no talk as to who would pay a legitimate claim that afterward came up.

Q. You knew these debts of the corporation were assumed by you gentlemen and paid afterwards, some of them in a month, and some in six months, is that true? A. Yes, sir, they were taken over·and taken care of and paid, as per agreement. I was secretary of the new company.''

The receiver testified, in answer to the following questions:

''Q. How did you come to give a deed for the property without getting paid for it? A. Because I got a consideration for it. Q. What was the consideration? A. Because he satisfied me that the debts of the concern, at that time, would be paid. Q. Yes, by whom? A. By him and his associates. Q. You made a deed of the corporation property to Mr. Umlandt, didn't you? A. Yes, sir. Q. Now when you gave him that deed he didn't give you the money, did he? I will ask you whether he gave you any money or not? A. Why, I think he did. He gave me part of it, not all of it.''

He was asked this question:

''Did Mr. Umlandt, at any time, agree to pay for that property more than the $47,800 he bid for it at the sale? A. Yes, sir. Q. What more? A. Why, he agreed to liquidate all debts of the old concern that were debts at the time.''

E. M. Warner testified for the defendant:

''I am attorney and I was attorney in the case of Bessie Farnsworth v. Muscatine Produce & Pure Ice Company; represented the corporation, the stockholders and the officers, who were made parties defendant at the beginning of the suit. I was the attorney for Mr. Umlandt up to the time it was dismissed as to him. I was attorney for the corporation at the time the receiver was appointed, and for its officers, and, I think, nearly all the stockholders. I continued to represent the defendant and these stockholders up to the time of the sale by the receiver. As to the arrangement to pay for the property, there were several meetings, nearly all of them at my office. It was said there that, in case outside parties would not buy the property for enough to pay its debts, then

it would be bid in in behalf of certain of the stockholders who were to pay all the debts of the corporation, with the exception of a claim made by one Oster for personal injuries, and the claim of Mrs. Farnsworth. We had a complete list of liabilities that the purchasers agreed to pay. It did not include either of these claims. On the contrary, I was directed to contest these claims. I represented Mr. Umlandt in negotiations which led up to the purchase of the property from the receiver. It was bought in by me for Mr. Umlandt and three or four of the stockholders who were associated with him. I was here in court when the receiver made his report of the sale, and also in the final report and the approval thereof. I saw the papers before they were filed, and was here when they were filed. The property was sold very shortly after the appointment of the receiver, because we wanted to get the business going. There was a conference before the sale, in which discussion was had about the debts of the corporation. That is why we had the receiver appointed to take care of it. The stockholders and the company adopted a resolution under the statute to sell the property at either public or private sale, and that proceeding was had before the receiver was appointed. I was present all the time while the final report of the receiver was being prepared. I bought in the property. The conveyance was made directly to Mr. Umlandt. It was bought in my name, but that was only nominal. I had a $10,000 certified check that I turned over to the receiver. The debts ran up to about $50,000, possibly $57,000. My impression is that it was something about $30,000 which we owed the banks which was endorsed by the officers. I believe new notes were given by the new company, so the original indebtedness for which the receiver was responsible was wiped out, and the debts renewed in favor of the new company. This was done before the receiver's final report was presented, and then a new company was organized with a capital of $75,000. The stockholders in the new corporation were the stockholders in the old corporation. They had

to pay the debts. Every single penny that the corporation owed was provided for—what we regarded as being owed. During all this time, I was acting as attorney for the parties.''

Upon the final submission of the cause to the jury, the jury returned a verdict for the plaintiff for the full amount of her claim, and answered the following special interrogatories in her favor:

''1. Was the plaintiff, at the time of the purchase of the property of the corporation by the defendant, entitled to recover from such corporation the consideration paid for the stock in question? A. Yes. 2. Did the defendant agree to pay the indebtedness, if any, owing by such corporation to the plaintiff? A. Yes.''

The court, on motion of the defendant, set aside the verdict, on the ground that the evidence was insufficient to warrant the verdict, and that the verdict was contrary to the evidence, and from this, the plaintiff appeals.

As a rule, we are not disposed to interfere with the action of the court in setting aside verdicts and granting new trials, for the reason that a large discretion is lodged in the trial court. But we cannot concur with the action of the court in this case in setting aside this verdict, on the record made and upon the grounds alleged. We cannot but feel that the record discloses to a certainty that all the proceedings touching the appointment of a receiver, the taking possession of the assets of the corporation, the sale of the corporate property, the re-organization of the new company out of the assets of the old company, the agreement on the part of the old stockholders to secure the discharge of the receiver, were friendly proceedings, both on the part of the old corporation and the receiver in charge of its assets. There can be no question that the receiver understood, when he made his report, that all the debts of the corporation were to be paid by the parties to whom the property was turned over. He so reported to the

2. APPEAL AND ERROR: review: overruling order for new trial.

court. Upon this report, the court acted. This report was made with the knowledge of this defendant and the other stockholders. That knowledge came to them through their attorney, who examined this report and was familiar with all the proceedings which led up to the report.

We cannot escape the conclusion that it was the intention of these parties, including this defendant, to pay the debts of the corporation; that they agreed to pay all the legitimate debts of the corporation. It cannot be denied that this defendant and the other stockholders were then under an impression that plaintiff would not be able to establish her claim against the old corporation, or against its funds. The list which was used was a list made from the books of the corporation. Plaintiff's list was not a book affair—a suit for damages, of which defendants had knowledge, and which they all conceded would be, if established, a claim against the property which they received—and we cannot but feel from this whole record, assuming these parties to be reasonably honest in their dealing with the court and the receiver, that they intended to pay, and promised to pay, and undertook to pay, all the debts of the corporation, but not this claim, specifically, because they were of the opinion that this particular claim could not be established as a claim against the corporation. This defendant and the other stockholders agreed to pay all the debts of the corporation. They made a list, however, of the claims that appeared upon their books, and omitted this claim only because it did not appear upon the books. Such a list may have existed. We have no doubt it did exist, but we do not believe that this defendant intended to purchase all the assets out of which plaintiff's claim could be paid, and then deny her the right to the satisfaction of her claim out of the property of her judgment debtor, by the methods pursued in this case.

However that may be, we are satisfied that the record discloses such affirmative proof in support of plaintiff's claim that the jury were justified in returning the verdict that they

did; that the verdict had full support in the evidence upon all disputed points, and ought not, therefore, to be disturbed. We think, therefore, that the court erred in setting aside the verdict and granting a new trial—an error which this court feels it its duty to correct. The action of the court in granting a new trial is, therefore, reversed, and the cause remanded, with direction to the court to enter judgment for the plaintiff upon the verdict.—*Reversed* and *Remanded.*

Evans, C. J., Ladd and Salinger, JJ., concur.